Mr. Lonnie C. Turner Chairman, Franklin County Election Commission c/o Turner Mainard 110 West Commercial Ozark, AR 72949
Dear Mr. Turner:
This is in response to your request for an opinion concerning election tabulation procedures. You have asked seven specific questions regarding certain events which transpired at the May 26, 1992 primary election in Franklin County. Four of these questions are restated below. The other questions, however, will be addressed by separate correspondence.
You state that you serve as the chairman of the Franklin County Election Commission and the secretary of the Franklin County Democratic Central Committee. You were serving in these positions at the time of the primary election held May 26, 1992. The method by which the returns from the various precincts in Franklin County would be tabulated was apparently discussed between yourself, the other election officials and the county clerk. The tabulation was to take place at the clerk's office. You state that you established a plan to accommodate the need for adequate working space for the election officials in the clerk's office and still provide reasonable access to the candidates, the public and the news media.
You state that the owner/operator of the local radio station demanded that the Commission provide space for his broadcast physically inside the clerk's office. This request was denied. You state that at about 8:00 p.m., the first box came in and, as the second box was coming in, the owner/operator of the radio station, his equipment, two of his personnel, the Chief of Police and a Deputy Sheriff confronted you at the doorway of the clerk's office and advised you that they had a right to broadcast from inside the clerk's office. You state that you advised them that that was not going to happen since there was not space available. You state that you advised of the arrangements for press access to the information. You state that when you refused to allow broadcast to be made from inside the clerk's office, the Chief of Police advised you that he was arresting you for disorderly conduct. You were removed from the premises and held at the county jail for three and one-half hours. At the time of your removal, the local radio station, its owner/operator and two additional personnel were allowed to enter the clerk's office and establish a broadcast system from that office.
The questions you have raised are restated and addressed below in the order posed.
 1. Did the Chief of Police have the legal authority to arrest and remove the chairman of the election commission from the tabulations of the returns based on the chairman's refusal to allow a broadcast to be conducted in the same room where the votes were being tabulated and to further detain him for three and one-half hours while the returns were being tabulated in order to allow the broadcast to be made from inside the polling place?
The factual nature of this question precludes the issuance of an opinion by this office. The resolution will require a a review of all facts and circumstances surrounding the incident in order to assess the validity of the action of the Chief of Police. This type of factual inquiry is not properly within the scope of an Attorney General opinion, but rather must be addressed by a fact finder.
 2. Does any member of the media have the right to hold, handle, touch certificates of election during the time that they are being processed by the proper election officials prior to the time that the election officials have released them to the County Clerk without the election officials' permission or consent?
It is my opinion that the answer to this question is, generally, "no." The applicable provisions with regard to electronic voting are very clear in providing that "[n]o person except those employed and authorized for that purpose shall touch any vote card, vote card container, or return." A.C.A. § 7-5-615(b) (Repl. 1991). With regard to voting machines, all tabulation blanks, certificates, and statements ". . . shall be forwarded or delivered to the proper officials as is provided by law." A.C.A. § 7-5-529 (Repl. 1991). There is no provision for the handling of these materials by any other persons. Similarly, under the general provisions governing election procedure, there appears to be no authority for the handling of this material by anyone other than election officials.[1] See A.C.A. §§ 7-5-315—317 (Repl. 1991).
 3. Is there any state, federal or other law that defines what reasonable access is in and to the room wherein votes are being tabulated.
I must view this question in the context of your first inquiry regarding the Chief of Police's arrest authority in this particular instance. Because this question will, in all likelihood, present an issue to be resolved by the court hearing your case, I am not in a position to respond in that context.See response to Question 1. I will note, however, that there is no specific state or federal statute defining "reasonable access." My research has yielded several state Code sections that address the presence of any candidate, political party or designated representative at the count of the ballots. See
A.C.A. §§ 7-5-316 (Repl. 1991), 7-5-527 (Repl. 1991) and 7-5-615
(Repl. 1991). These provisions speak generally in terms of those whose presence is authorized by statute.
 4. What state or federal offices are available to provide legal advice to the local election commissions concerning the manner in which the elections are to be conducted?
I am not aware of any federal office that provides advice on the type of questions you have posed herein, that is, questions involving the actual vote counting process. With regard to state offices, reference should be made to A.C.A. § 7-1-106 (Repl. 1991), which states:
 The Secretary of State shall designate at least one (1) member of his staff to become knowledgeable of the election laws as they pertain to elections in the State of Arkansas for the purpose of answering procedural questions concerning elections and to aid the candidates and their agents in filing for election.
Thus, procedural questions should be addressed by the Secretary of State's office. This office, of course, provides opinions to county boards of election commissioners on questions concerning the provisions of the election laws of the state. A.C.A. §25-16-706(b) (Repl. 1992).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] An exception with regard to ballots would be the procedure set forth in A.C.A. § 7-5-316(a) (Repl. 1991) for the inspection of ballots by a candidate, political party, or authorized representative, at the time the ballots are being counted. This may be done upon request made to a judge or clerk. Id.